UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06CV-95-H

AMY C. JAGLOWICZ                                               PLAINTIFF

V.

TEXAS LIFE INSURANCE COMPANY                     DEFENDANT

**MEMORANDUM OPINION AND ORDER**

       Defendant Texas Life Insurance Company's ("Texas Life" or "Defendant") moves to enforce settlement and dismiss Plaintiff's Amended Complaint. The case has an unusual procedural posture. The beneficiary of a life insurance policy, Amy Jaglowicz ("Jaglowicz" or "Plaintiff), sued Texas Life for breach of an insurance contract. Defendant now alleges that Plaintiff's counsel agreed to settle the case and then attempted to amend her complaint to include extra-contractual claims. This issues raised present difficult legal and equitable questions. Each side has strong arguments in their favor. For the reasons discussed below, we conclude that we should not enforce a settlement as to the new claims in the amended complaint.

I.

       The circumstances leading to the current dispute are as follows.

       On July 29, 2005, Robert Jaglowicz died, while the owner of a $75,000 life insurance policy (the "Policy"), provided by Texas Life. Plaintiff was the beneficiary under the Policy. For several months Texas Life refused to pay on the Policy based upon its interpretation of certain policy conditions. Finally, on December 29, 2005, Jaglowicz filed a breach of contract action in Marion County (Kentucky) Circuit Court claiming Texas Life owed her the $75,000.00

insurance benefits. After a short period of negotiation, on January 19, 2006, counsel for Texas Life indicated that Texas Life would pay the claim. On that date Jaglowicz's counsel confirmed that discussion by letter which stated in part:

> It is my understanding that Texas Life Insurance Company has determined that it will pay Ms. Jaglowicz's claim with interest and *we will thus dismiss this litigation*, with prejudice, upon receipt of the appropriate settlement drafts. We will also return your premium reimbursement check issued by Texas Life Insurance Company by Ms. Jaglowicz which is currently being held by me.

Neither a settlement check nor settlement drafts were sent immediately. Whether this suggests any doubt as to the finality of the settlement cannot be said. Nevertheless, after some three weeks of waiting for a check, on February 9, 2006, Jaglowicz's counsel sent an email to counsel for Texas Life indicating his intent to amend the complaint to add a bad faith claim. One day later he filed an Amended Complaint, adding claims for bad faith and violations of the Kentucky Unfair Claims Settlement Practices Act, KRS § 304.12-230 *et seq.* ("KUCSPA") and the Kentucky Consumer Protection Act, KRS § 367.170 ("KCPA").

On February 20, 2006, Texas Life sent a check for $77,342.47, representing payment of Jaglowicz's claim plus interest. Enclosed with the check was a letter from Texas Life's counsel, expressing surprise at the amended complaint and stating that he believed that parties "had reached a settlement agreement which [Jaglowicz's counsel] confirmed . . . in writing." At that point, Jaglowicz agreed the breach of contract action was settled and returned the premium refund, but refused to dismiss the amended bad faith claims. Texas Life removed the action to this Court on February 21, 2006 and now seeks enforcement of the parties' settlement agreement and dismissal of the bad faith claims of the Amended Complaint.

II.

The first question presented is whether the settlement negotiated on and around January 19, 2006, constituted a settlement of all possible claims against Texas Life, including any bad faith claims, or only the contractual claims. Under Kentucky law, a settlement agreement is "a type of contract which is governed by contract law." *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 105 (Ky. 2003). When interpreting a settlement agreement, a court must first determine whether the agreement is ambiguous, or "capable or more than one different, reasonable interpretation." *Central Bank & Trust v. Kincaid*, 617 S.W.2d 32, 33 (Ky. 1981). If the contract is ambiguous, then extrinsic evidence may be resorted to in an effort to determine the intention of the parties. *Ford v. Ratliff*, 183 S.W.3d 199, 202 (Ky. App. 2006). Courts should endeavor to determine not what the parties *mean to say*, but rather what the parties *mean by what they said*. *Kincaid*, 617 S.W.2d at 33.

The Kentucky Supreme Court has instructed that courts should consider "the subject matter of the contract, the situation of the parties and the conditions under which the contract was written." *Frear*, 103 S.W.3d at 106. As types of extrinsic evidence, courts may also consider the circumstances surrounding execution of the contract, the objects to be accomplished, and the conduct of the parties. *See, e.g.*, *Reynolds Metals Co. v. Barker*, 256 S.W.2d 17, 18 (Ky. 1953); *Dennis v. Watson*, 264 S.W.2d 858, 860 (Ky. 1953); *L.K. Comstock & Co., Inc. v. Beacon Const. Co.,* 932 F.Supp. 948, 965 (E.D. Ky. 1993).

Here, the ambiguous term is "this litigation." The ambiguity is whether the term "this litigation" meant only the claims contained in the complaint or did it include all claims related to the transaction complained of in the complaint. The facts presented here are so odd that Court was unable to unearth any similar case where after a settlement was reached between two parties,

the plaintiff asserted a new cause of action against the same party and arising from essentially the same facts. One must look, therefore, to the known legal consequences of a settlement among lawyers and assume that two lawyers negotiating a settlement are familiar with the Kentucky law bearing upon it.

Kentucky courts have long ago held that "one sustaining an injury with consequent damage consisting of more than one item of damage may not split his single cause of action by maintaining in his name separate suits against the same tort-feasor for each item of damage sustained . . . ." *Travelers Indemnity Co. v. Moore*, 201 S.W.2d 7, 9 (Ky. 1947). The Kentucky Supreme Court went on to say that "it is the duty of a plaintiff to assert his entire cause of action resulting from a single tort, and upon failure to do so he, in effect, renounces his right to recover other items of damages in subsequent action." *Id.* at 10. Although the rule against splitting claims is normally discussed in the *res judicata* context (a context that is not present here because of the absence of a final judgment on the merits), its rationale nevertheless applies equally in the settlement context. Fairness to the defendant and sound judicial administration require that at some point litigation over a particular controversy be brought to a final conclusion. *See Kirchner v. Riherd*, 702 S.W.2d 33, 35 (Ky. 1985). It seems reasonable that such a final conclusion may occur either by judgment through trial or by settlement.

Here, there was no suggestion of a bad faith claim against Texas Life prior to the February 9, 2006 email from Jaglowicz's counsel to Texas Life's counsel. Given this fact and the existence of the rule against splitting claims, Texas Life's counsel had every reason to assume that the January 19 Letter represented a final and complete settlement of all claims related to the events underlying this action. Jaglowicz's counsel may have assumed otherwise.

If so, he would have been under the mistaken impression that a related unasserted claim could somehow survive settlement of the original action. Under Kentucky law, a unilateral mistake of law is not grounds for the reformation of a contract. *Investors Heritage Life Ins. v. Farmers Bank*, 749 S.W.2d 688, 690 (Ky. App. 1987). If Plaintiff wished to reserve any claims, he should have done so in the January 19th letter.

Because counsel's unilateral mistake cannot defeat enforcement of a contract, the settlement contract was a valid contract as to all possible claims between these parties relating to the same underlying events. Notwithstanding these conclusions, the Court's consideration is not ended.

### III.

Jaglowicz's counsel argues that he had neither an intention to settle both the contractual and extra-contractual claims nor the authority from his client to do so. Jaglowicz says that because her counsel did not possess such authority, the settlement cannot have a binding effect upon her. Even where Plaintiff's counsel had apparent authority to settle all claims arising from the dispute, Plaintiff's counsel argues, Kentucky law would not bind Jaglowicz. In these circumstances and considering all the equities, the Court agrees.

Kentucky law holds that "with respect to settlement, attorneys are without power to bind their clients." *Clark v. Burden*, 917 S.W.2d 574, 576 (Ky. 1996). In *Clark*, the Kentucky Supreme Court provides a thorough and well-considered evaluation of the difficult question of whether an attorney can bind their client without the actual authority to do so. This decision commands this Court's full respect. *Clark* also recognizes an exception for unusual circumstances:

5

>circumstances in which the rights of third parties might be substantially and adversely affected by an attorney possessing apparent authority but who lacked actual authority. If such a contention were made, a court of equity would be empowered to fix responsibility where it belonged to prevent injustice.

*Id.* No doubt the sequence of events in this case is peculiar. Defendant may have been surprised by the amended complaint. However, at some point Defendant knew that Plaintiff was asserting the bad faith claim and forwarded the settlement check anyway. Moreover, other than having to defend a claim it thought settled, Texas Life is not substantially affected by a particular injustice. Thus, the equities do not overwhelmingly favor one side.

Reading *Clark* as a whole impresses us that Kentucky courts are very concerned with the rights of the client, even where one of their attorneys has apparent authority to settle. Under these circumstances, we will not exercise equitable powers to bind a client in direct contradiction of her wishes and authority.[1]

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Texas Life's motions to enforce the parties' settlement agreement to the bad faith claims and to dismiss Jaglowicz's Amended Complaint are DENIED.

cc: Counsel of Record

---

[1] As yet, the Court is uncertain as to the possible basis for a bad faith claim. Presumably, these issues will be tested in due course.